# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGG BRADSHER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 25-cv-02782-JMY |
| SEGWAY, INC. and AMAZON.COM SERVICES LLC, | : : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM

**Younge, J.**                                                                                     **July 17, 2025**

## I.   INTRODUCTION

Before this Court is Defendant Segway, Inc.'s ("Segway") Motion to Compel Arbitration and Stay All Deadlines and Proceedings. ("Def.'s Mot.," ECF No. 14-1).[1] Segway moves to stay this case pending arbitration, arguing that Plaintiff Gregg Bradsher is subject to an enforceable and valid arbitration provision. (Def.'s Mot.). For the reasons set forth in this Memorandum, Defendant's Motion will be **DENIED WITHOUT PREJUDICE**.[2]

## II.   FACTUAL BACKGROUND

On or about May 1, 2023, Mr. Bradsher suffered severe and permanent bodily injury when his Segway Ninebot MAX G30LP KickScooter's ("KickScooter") handlebars collapsed. (Compl., ECF No. 1-3 at 4). The KickScooter was either designed, developed, manufactured, distributed, marketed, sold, assembled, maintained, tested, repaired, serviced, inspected, installed, licensed,

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

[2] The Court finds this Motion appropriate for resolution without oral argument. (Fed. R. Civ. P. 78); (L.R. 7.1(f)).

packaged, labeled, and/or provided safety recommendations by Defendants Segway and/or Amazon.com Services LLC ("Amazon"). Nearly two years after the injury, on or about March 21, 2025, Mr. Bradsher received a recall notice from Amazon regarding a potential malfunction in the KickScooter's folding mechanism that could cause the handlebars to collapse. (Compl. at 5).

Thereafter, on April 29, 2025, Mr. Bradsher filed a lawsuit against Segway and Amazon in the Philadelphia Court of Common Pleas. (Compl. at 25). The Complaint includes strict liability, negligence, and breach of warranty claims against Segway and Amazon. (Compl. at Counts I-VI). Relying on diversity jurisdiction, Segway and Amazon properly removed the case to the Eastern District of Pennsylvania on May, 30, 2025. (Notice of Removal, ECF No. 1). While Amazon filed an answer to the Complaint, (ECF No. 10), Segway filed the present Motion to Compel Arbitration and Stay Proceedings, alleging that Mr. Bradsher is bound by a valid and enforceable arbitration agreement in the KickScooter's limited warranty. (Def.'s Mot.).

In their Motion, Segway includes a declaration from Wei Zhao, General Counsel at Segway. (ECF No. 14-2). In said declaration, Mr. Zhao outlines that consumers of the KickScooter could have encountered one of many versions of a limited warranty that applied to the product, including the following:

(1) Two printed limited warranties applicable in the United States ("Limited Warranty Version 1" and "Limited Warranty Version 2") (collectively referred to as "Americas Limited Warranty"). While the Americas Limited Warranty included an arbitration agreement, only the later version, Limited Warranty Version 2, was titled "Limited Warranty and Dispute Resolution Agreement" on the cover of the booklet;

(2) A printed limited warranty applicable in Europe, the Middle East, and Africa ("EMEA Limited Warranty"). The EMEA Limited Warranty stated on its face that it was not applicable to purchasers in the United States, and it did not include an arbitration agreement in the booklet;

(3) an online limited warranty available through Segway's website ("Online Limited Warranty"). The Online Limited Warranty included an arbitration agreement. It could be found at (i) https://www.segway.com/warranty/information from approximately June 2019 to February 2025, (ii) https://support.segway.com/service/warranty from May or June 2023 to March 2025, (iii) https://store.segway.com/warranty-information from November 2021 through the present, and (iv) through the "download center" via the "support page" on Segway's website starting in July 2022; and

(4) an online limited warranty available from retailers selling Segway products at the time of purchase ("At-Purchase Limited Warranty"). The At-Purchase Limited Warranty included an arbitration agreement. At unspecified times, Amazon's website would have included the At-Purchase Limited Warranty. And starting from September 2024 to the present, the At-Purchase Limited Warranty would appear prior to checkout of the KickScooter on Segway's website. (ECF No. 14-2, p. 1-7).

The arbitration agreements that were included with each respective limited warranty were not identical. (ECF No. 14-2, p. 7). For example, the arbitration agreement in Limited Warranty Version 1 appeared as follows:

### 6. Applicable Law and Disputes

SEGWAY (FOR PURPOSES OF THIS SECTION 6 OF THIS LIMITED WARRANTY, "NINEBOT" AND "SEGWAY" ARE COLLECTIVELY REFERRED TO AS "SEGWAY") AND YOU AGREE THAT ALL CLAIMS OR DISPUTES ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT,

> WHETHER BASED IN CONTRACT, TORT, STATUTORY FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL THEORY… SHALL BE RESOLVED THROUGH ARBITRATION AS PROVIDED FOR HEREIN, OR IN SMALL CLAIMS COURT, AND NOT BY A TRIAL BY JURY. YOU WAIVE THE RIGHT TO A TRIAL BY JURY…. THIS AGREEMENT EVIDENCES A TRANSACTION IN INTERSTATE COMMERCE, AND THUS THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION. THIS PARAGRAPH SHALL SURVIVE THE TERMINATION OF THIS LIMITED WARRANTY.

(ECF No. 14-2, p. 12). However, despite any differences, all of the arbitration agreements gave customers the opportunity to opt out of arbitration within thirty days of their purshcase of the KickScooter. (ECF No. 14-2, p. 7).

To use their KickScooter, the consumer would first have to remove the device from its box. On the outside of the box, a visible label directs the user to "please visit segway.com for further information." (ECF No. 14-2, p. 4). Then, upon opening the box, the purchasers must remove a packet that includes both a printed limited warranty booklet and User Manual. (Def.'s Mot., p. 7). This packet rests above the packaging material at the top of the box. (Def.'s Mot., p. 7). To access both the electric charger for the KickScooter and fasteners and screws necessary to assemble the device, the consumer would have to encounter and remove this packet. (Def.'s Mot., p. 7). Only after this entire process could a purchaser ride a fully assembled KickScooter. (Def.'s Mot., p. 7).

With respect to the limited warranty booklet, consumers either received the Americas Limited Warranty or the EMEA Limited Warranty, depending on when they purchased the product. (Def.'s Mot., p. 7). Segway packaged KickScooters manufactured in 2020 and 2021 with one of the two printed Americas Limited Warranties. (Def.'s Mot., p. 7). However, KickScooters manufactured during and after 2022 came with the EMEA Limited Warranty, even if shipped to American consumers. (Def.'s Mot., p. 8). In Mr. Bradsher's Complaint, he does not indicate the manufacturing year of his scooter. (Compl.).

The aforementioned User Manual requests that customers verify that their package includes a variety of items in their packaging, including, *inter alia*, a "Limited Warranty" booklet. (ECF No. 14-2, p. 59). If any item is missing from the packaging, the User Manual instructs consumers to contact the nearest service center. (ECF No. 14-2, p. 59). On page 14 of the User Manual, the contact information page includes Segway's website, segway.com. (ECF No. 14-2, p. 67).

### III.   LEGAL STANDARD

In the determination of a motion to compel arbitration, the Court must first decide whether to apply the Federal Rule of Civil Procedure 12(b)(6) or Rule 56 standard of review. *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329–30 (3d Cir. 2022); *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). Conversely, the Rule 56 standard will apply when "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate." *Guidotti*, 716 F.3d at 774 (internal quotations omitted).

In this case, the Complaint does not reference any arbitration agreement directly. Plaintiff does claim breach of "express and/or implied warranties," which Segway argues includes an applicable limited warranty on the face of the claim. (Compl., p. 15; Def.'s Mot., p. 12). However, Plaintiff asserts breach of warranty under common law and 13 Pa. Cons. Stat. §§ 2314 and 2315, not the Americas Limited Warranty itself. (Compl., p. 15). Defendant principally raises the existence of an arbitration agreement in its Motion to Compel, attaching multiple allegedly valid

and enforceable versions of a limited warranty that includes an arbitration agreement. Segway further relies on factual evidence outside of the pleadings, notably the Declaration of Wei Zhao, Segway's General Counsel. (ECF No. 14-2 at 1). Segway uses this evidence to argue that there is sufficient factual basis to rule, as a matter of law, that one of these arbitration agreements in the limited warranties applies to and binds Mr. Bradsher. (Def. Mot. at 6). Therefore, although Segway argues that a Rule 12(b)(6) standard is applicable here, this Court rejects that argument and applies the summary judgment standard to resolve Defendant's Motion.

Under summary judgment standard, arbitrability may be decided as a matter of law "[o]nly when there is no genuine issue of fact concerning the formation of the agreement…." *Vilches v. Travelers Cos.*, 413 F. App'x 487, 491 (3d Cir. 2011) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir.1980) (abrogated on other grounds)); *see also Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017); Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* In application of this standard, the Court may consider facts and evidence outside of the complaint. *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 248 (3d Cir. 2025). "The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009).

## IV.     DISCUSSION

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Pursuant to the FAA, courts "compel

arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing FAA, 9 U.S.C. §§ 3, 4). However, "[a]rbitration is strictly a matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999). "The federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts… in deciding whether an arbitration agreement is valid under the FAA." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 213 (3d Cir. 2003). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015); *see also Trippe Mfg. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability."). Mr. Bradsher argues that, at this stage in the litigation, there is insufficient evidence that demonstrates that an arbitration agreement covering his claims had mutual assent. (Plaintiff's Response, ECF No. 17 ("Pl.'s Resp."), p. 4). First, the Court will determine which state law to apply in its review of the arbitration agreements' enforceability. Then, under that law, the Court will review the enforceability of the arbitration agreements under the summary judgment standard.

    **A. Choice of Law**

The parties have not identified an applicable choice-of-law provision in the presented arbitration agreements, nor has the Court found said provision in its review, so the Court must assume that the arbitration agreements do not contain a choice-of-law provision. In absence of this provision, Segway suggests that the Court apply Delaware law because Segway "is a Delaware entity." (Def.'s Mot., p. 14). However, "[a]s a federal court sitting in diversity, we apply the choice-

of-law rules of the forum state, which is Pennsylvania in this case." *Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012). Accordingly, when there is no choice-of-law provision, "Pennsylvania applies the… flexible, 'interests/contacts' methodology to contract choice-of-law questions." *Id.*

In *Pacific Employers Insurance Co.*, the Third Circuit outlines the steps of the "interests/contacts" method as follows:

> [T]he first step in the analysis is to identify the jurisdictions whose laws might apply. *Id.* at 230. As candidates, the parties offer New York and Pennsylvania. Next, we must determine the substance of these states' laws, and look for actual, relevant differences between them. *Id.* "If [the] two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Id.* (emphasis in original). If there are actual, relevant differences between the laws, then we "examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id.* "A deeper choice of law analysis is necessary only if *both* jurisdictions' interests would be impaired by the application of the other's laws (*i.e.,* there is a true conflict)." *Id.* (quotation marks and alteration omitted) (emphasis in original).

693 F.3d at 432. As mentioned, Segway offers Delaware. Mr. Bradsher, on the other hand, makes no mention of which law to apply for the contract. Because Mr. Bradsher is a Pennsylvania resident, originated the case in Pennsylvania state court, and brings claims under Pennsylvania statutes, the Court will construe that his position is that Pennsylvania law applies. That said, there is no "actual conflict" between Delaware and Pennsylvania law. To form a contract in either State, the parties must manifest mutual assent. *See Chilutti v. Uber Techs., Inc.,* 300 A.3d 430, 443 (Pa. Super. 2023) ("Under Pennsylvania law, the elements of an enforceable contract are an offer, acceptance, consideration, or mutual meeting of the minds…. [T]here must be a meeting of the minds; the very essence of an agreement is that the parties mutually assent to the same thing.") (internal citations and quotations omitted); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) ("Under Delaware law, 'overt manifestation of assent—not subjective

intent—controls the formation of a contract.'"). Because there is no conflict, the Court "may refer interchangeably to the laws of the states whose laws potentially apply." *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 606 n.5 (E.D. Pa. 2025) (quoting *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)).

### B. There is a Genuine Issue of Material Fact Regarding Whether There is an Enforceable Arbitration Agreement.[3]

Mr. Bradsher contests whether the parties mutually assented to the terms of an arbitration agreement, thus putting into question whether the agreement is enforceable. (Pl.'s Resp., p. 4). Generally, to answer this question about mutual assent, courts look to see whether the parties had reasonable notice of the contract terms. *See Alexander v. Lyft, Inc.,* No. N24C-09-064 FJJ, 2025 WL 689696, at *2 (Del. Super. Ct. Mar. 4, 2025); *Chilutti,* 300 A.3d at 447-451 (analyzing notice in the Court's determination of mutual assent). Segway presents numerous ways a consumer of the KickScooter would have received notice of the arbitration agreement, which are dependent on the year and method that the product was purchased. However, Mr. Bradsher did not plead the year or method that his KickScooter was purchased in his Complaint, nor has either party provided such information in their briefing. Segway suggests that these facts are not dispositive, as it argues that the KickScooter would have "either contained the applicable product insert (Limited Warranty) with the Arbitration Agreement and/or directed Plaintiff to Segway's website where the Limited Warranty and Arbitration Agreement were accessible." (Def.'s Mot., p. 17). Stated otherwise, Segway argues that Mr. Bradsher would receive notice of an arbitration agreement regardless of the year or method that he purchased the KickScooter. Under this logic, how Mr. Bradsher received

---

[3] Because there is a genuine issue of material fact regarding enforceability, the Court will not review the scope of said agreements. *See, e.g, Conte v. Shear*, No. 20-16458, 2021 WL 11721659 (D.N.J. June 24, 2021).

notice of the arbitration agreement is *not* a material fact *only if* all of the potential methods would have provided Mr. Bradsher reasonable notice. That is not the case here. Because Mr. Bradsher would not have received reasonable notice of the arbitration agreement if he had purchased a KickScooter manufactured during and after 2022, whether and how he received notice is a material fact that is in dispute, warranting further discovery and dismissal of this motion. *See Young v. Experian Info. Sols., Inc*., 119 F.4th 314, 320 (3d Cir. 2024) ("Because the record was insufficient for the district court to make that threshold determination before compelling arbitration, we remanded the case for further fact discovery.").

Segway emphasizes the "shrinkwrap agreement," or "in-the-box-contract," that would have bound Mr. Bradsher to arbitrate. (Def.'s Mot., p. 15). The Third Circuit defines these contracts as "terms included in a document inside the box that contains the purchased product." *Noble v. Samsung Elecs. Am., Inc*, 682 F. App'x 113, 117 n.4 (3d Cir. 2017). All KickScooter consumers would have received limited warranty booklets in the packaging of the product. However, Segway acknowledges only those KickScooters manufactured in 2020 and 2021 included the *Americas* Limited Warranty. The Americas Limited Warranty included an arbitration agreement printed in the booklet. For KickScooters manufactured during and after 2022, the packaging likely included the EMEA Limited Warranty booklet, which did *not* include an arbitration agreement, and did not apply to purchases in the United States. (Def.'s Mot., p. 3). Segway argues that, regardless of whether Plaintiff received the printed Americas or EMEA Limited Warranty, all manufactured KickScooters included *other* printed documents that reference the applicable warranty. Segway points out that page four of the User Manual references a "Limited Warranty," and that the exterior of the box directed users to "to visit segway.com for further information." (Def.'s Mot., p. 8). According to Segway, this information together should

have led users to find the Limited Warranty online, which includes an arbitration agreement. (Def.'s Mot., p. 8).

Segway points the Court to *Payne v. Samsung Elecs. Am., Inc.* to suggest that Mr. Bradsher was provided, at minimum, "inquiry notice" of the arbitration agreements. *See* No. N23C-03-193, 2024 WL 726907, at *8 (Del. Super. Ct. Feb. 21, 2024). In *Payne*, the Delaware Superior Court reviewed the enforcement of an arbitration agreement between the purchaser of a cellphone and Samsung under Delaware law. *See id.* at *1-3. Specifically, the court analyzed whether the purchaser had "inquiry notice," which "[a] party is deemed to have… upon discovery of facts constituting a basis for the cause of action, or [where the party] knows facts sufficient to put a person of ordinary intelligence and prudence on inquiry, which if pursued would lead to the discovery of such facts." *Id.* at *5 (internal quotation marks omitted). Stated otherwise, "if [a party] does not have actual notice of [the] terms… he is on inquiry notice… where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Id.* (internal quotation marks omitted).

Under this standard, the Delaware Superior Court held that the multiple "notices, individually and in combination, provided [the purchaser] with reasonably conspicuous notice of contract terms to support mutual assent to the arbitration agreement." *Id.* at *5 (internal quotations marks omitted).  The *Payne* court explained that had the purchaser read the following notice on the box of the product in bold font, he would have learned that there was an arbitration agreement:

> **IMPORTANT INFORMATION**
>
> **If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, and enclosed materials & device settings.**

*Id.* at *7. This information would have told the purchaser that the arbitration agreement was enclosed inside the box and at the URL link on Samsung's website. *See id.* These statements, according to the Court, would have put the purchaser on inquiry notice. *See id.* The Court also found that the booklet inside the box would have put the purchaser on inquiry notice of the arbitration agreement. *See id.* at *8. The cover page of the booklet states "**Read this document before operating the mobile device…. This document contains important Terms and Conditions.**" *Id.* Then, directly under this statement, there are four bullet points, the first of which is "Arbitration Agreement." *Id.* The Court held that had the purchaser encountered the notice, "like any reasonably intelligent and prudent person," he would have been on notice to inquire further. *Id.* As Segway points out, the *Payne* Court did not accept the purchaser's "own inattention in failing to look at the box or the material contained in it" as a basis to challenge the enforceability of the agreement. *Id.*

In this case, any reasonably intelligent and prudent person that purchased a KickScooter manufactured during or after 2022 would not have been provided inquiry notice of the arbitration agreement. As explained, Segway acknowledges that the purchaser of the Kickscooter manufactured during that period likely received the EMEA Limited Warranty, which stated that it did not apply to the United States, and did not include an arbitration agreement. For this version of the KickScooter, Segway looks to the exterior of the box and the User Manual to provide notice. Unlike in *Payne*, the exterior of the KickScooter box does *not* mention an arbitration agreement, a warranty, or even terms and conditions related to the product. Instead, Segway highlights that the exterior of box says "**Please visit www.segway.com for further information**."[4] (ECF No. 14-2,

---

[4] Segway does not provide information about the font size of this sentence. On its face, the font size of this sentence looks comparable to the other information that it falls below. The font size

p. 4). This sentence is positioned below the listed information about technical details of the KickScooter, including the model number, weight, and dimensions. If anything, a user would think that the instruction to visit the website would be to receive more information about these technical details—not for information on the arbitration agreement, a warranty, or the terms and conditions. Segway seems to suggest that the User Manual would have prompted users to visit their website to see the arbitration agreement. (Def.'s Mot., p. 8). In this Court's view, it does not. On page four of the User Manual, the booklet informs users that a Limited Warranty is included. (ECF No. 14-2, p. 59). The booklet instructs users to "verify that the [item is] included in the package," and to contact the "dealer/distributor or nearest service center" if the item is missing. (ECF No. 14-2, p. 59). These instructions are very different from that in *Payne*, which informed users that the full terms of the warranty were at the exact URL link provided. While Mr. Bradsher would have been made aware that the EMEA Limited Warranty did not apply to him, he could not have gathered from the information on the box and in the User Manual that the Online Limited Warranty was available on Segway's website. Accordingly, if Mr. Bradsher purchased a KickScooter manufactured during or after 2022, he would not have been provided "reasonably conspicuous notice of contract terms to support mutual assent to the arbitration agreement."[5] *Payne*, 2024 WL 726907, at *8.

  Finally, Segways contends that consumers of the G30LP KickScooter received the arbitration agreement online, prior to checkout. (Def.'s Mot., p. 9). In Wei Zhao's declaration, he

---

does not make the sentence stand out in comparison to the other information. (ECF No. 14-2, p. 4).

[5] Moreover, even if this information had instructed consumers to visit "segway.com" for more information on the Limited Warranty, they would not have found that information at that exact URL link. In Wei Zhao's declaration, he explains that "consumers could navigate to additional web pages from segway.com that provide access to a limited warranty applicable to all Segway KickScooters." (ECF No. 14-2, p. 4).

explains that, "at various times, customers may also have received notice of the limited warranty and Arbitration Agreement through links or downloads from retailers selling Segway's products." (ECF No. 14-2, p. 5). Amazon's website, "at least at certain times, has provided access to a limited warranty and Arbitration Agreement[.]" (ECF No. 14-2, p. 5-6). Accordingly, Mr. Zhao suggests that there may have been times a consumer could purchase a KickScooter on Amazon without receiving notice of Segway's terms and conditions. Additionally, after September 2024, consumers who obtained the scooter directly through Segway's website encountered a notice of the At-Purchase Limited Warranty, which includes an arbitration agreement. (ECF No. 14-2, p. 6) (showing "Segway's **Sales of Goods T&C** (including Arbitration & Restocking Fee)" above "Proceed to Checkout."). As mentioned, neither Plaintiff's Complaint nor Defendant's Motion reveals when exactly Plaintiff purchased his KickScooter. With this fact in dispute, a reasonable jury could therefore conclude that Plaintiff, allegedly injured in May 2023, purchased a KickScooter manufactured after 2022, neither directly receiving a printed, valid, and enforceable version of the Americas Limited Warranty, nor an electronic notice before purchase.

Giving the benefit of all reasonable doubts and inferences to Mr. Bradsher, this Court concludes that a genuine issue of material fact exists as to whether Plaintiff agreed to arbitrate. A reasonable jury could conclude that Plaintiff did not receive adequate notice of the applicable warranty through the KickScooter's printed packaging, nor through the online retailer pre-sale. Accordingly, further discovery is required to determine whether Mr. Bradsher received notice of an arbitration agreement, which, in this case, could be dependent on what year and method he purchased a KickScooter. *See Guidotti,* 716 F.3d at 776 ("[I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in

issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.") (internal citations and quotation marks omitted).

## V.     CONCLUSION

For the reasons discussed above, Defendant's Motion to Compel Arbitration and Stay All Deadlines and Proceedings is DENIED WITHOUT PREJUDICE. Defendant can file a renewed motion to compel arbitration following discovery.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**